UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARK GULLET,                                        )
                                                    )
          Plaintiff,                                )
                                                    )
vs.                                                 )          Case No. 4:18CV1571 JCH
                                                    )
CITY OF ST. LOUIS, MISSOURI, et al.,                )
                                                    )
          Defendants.                               )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Third Amended Complaint, filed January 19, 2021.  (ECF No. 117).  The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

This and several other cases filed in this District share a general set of facts regarding the actions of St. Louis Metropolitan Police Department ("SLMPD") officers during mostly peaceful protests following the September 15, 2017, verdict in *State of Missouri v. Stockley*.  *See, e.g.,* *Ortega v. City of St. Louis, Mo.*, No. 4:18CV1576 DDN, 2021 WL 3286703 (E.D. Mo. Aug. 2, 2021); *Laney v. City of St. Louis, Mo.*, No. 4:18CV1575 CDP, 2019 WL 2423308 (E.D. Mo. Jun. 10, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18CV1567 AGF, 2019 WL 2647273 (E.D. Mo. Jun. 27, 2019); *Alston v. City of St. Louis, Mo.*, No. 4:18CV1569 AGF, 2019 WL 2869896 (E.D. Mo. Jul. 3, 2019); *Thomas v. City of St. Louis, Mo.*, No. 4:18CV1566 JAR, 2019 WL 3037200 (E.D. Mo. Jul. 11, 2019).

---

[1] The Court's background section is taken mainly from Plaintiff's Third Amended Complaint, to which only Defendant City of St. Louis has filed an Answer.

On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, acquitting former SLMPD officer Jason Stockley of the first-degree murder of Anthony Lamar Smith.  (Third Amended Complaint ("TAC"), ¶ 21).  The verdict prompted some members of the public to engage in protest activity around the St. Louis metropolitan area, including within the City of St. Louis.  (*Id.*, ¶ 22).  The protests concerned not only the verdict itself, but broader issues, including racism in the criminal justice system and the use of force by police officers.  Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents.  (*Id.*, ¶¶ 23, 25).[2]

The specific allegations regarding Plaintiff in this case are as follows:  On the evening of September 17, 2017, Plaintiff Mark Gullet, a freelance filmmaker residing in St. Louis, went to downtown St. Louis with hopes of recording background footage of protest activity.  (TAC, ¶¶ 136, 137).  He arrived downtown at 11:00 p.m., after any alleged orders of dispersal were made.  (*Id.*, ¶ 138).  Plaintiff did not encounter any police on his way downtown.  (*Id.*, ¶ 141).  Upon his arrival, he parked at the southwest corner of the intersection of Washington Avenue and Tucker Boulevard.  (*Id.*, ¶ 140).

Soon after arriving, Plaintiff saw police officers in riot gear north and south of the intersection of Washington and Tucker.  (TAC, ¶ 142).  At that time, he did not observe anyone engaged in illegal activity; rather, the area looked relatively calm.  (*Id.*, ¶ 143).  Plaintiff then saw officers begin to corral people into the intersection.  (*Id.*, ¶ 144).  He saw police officers carrying bicycles to the east of the intersection, and asked those officers if he could leave.  (*Id.*, ¶ 145).  Instead of allowing him to leave, the officers pushed their bicycles toward Plaintiff and

---

[2] An extensive recitation of the general factual allegations of this and the other cases stemming from the *Stockley* verdict and protests can be found in *Ortega*, 2021 WL 3286703.

told him to get back.  (*Id.*, ¶ 146).  Plaintiff observed a man break through the line of bicycle-wielding officers, and tried to follow him to safety.  (*Id.*, ¶ 147).  The officers pulled the man back into the kettle, however, and prevented Plaintiff from escaping.  (*Id.*, ¶ 148).  Plaintiff heard no police warnings or orders to disperse.  (*Id.*, ¶ 150).

Plaintiff voluntarily got down on his knees.  (TAC, ¶ 151).  At that point, Plaintiff observed officers unleash pepper spray without warning.  (*Id.*, ¶ 152).  Defendants Bill Kiphart and Matthew Burle then sprayed Plaintiff and another with large pepper spray cannisters, known as foggers.  (*Id.*, ¶ 153).  As Plaintiff attempted to hide from the spray, an unidentified officer grabbed his arms so forcefully he feared his right shoulder was going to pop out.  (*Id.*, ¶ 154).  The officer then restrained Plaintiff's hands with zip ties, and pepper sprayed him directly in the face.  (*Id.*).  While he was zip tied, Plaintiff heard an officer taunt the peaceful arrestees by saying, "You guys are clowns."  (*Id.*, ¶ 156).  Two other unidentified officers then violently yanked Plaintiff from the ground, and handed him to Defendant Jeremiah Koerper, who completed the arrest.  (*Id.*, ¶ 157).

Plaintiff was taken to the St. Louis City Justice Center, where he received no medical attention.  (TAC, ¶ 158).  He was one of the last people to be released from the holding cell, and was jailed for approximately twenty hours.  (*Id.*, ¶ 159).

Plaintiff filed his original Complaint in this matter on September 17, 2018.  In his Third Amended Complaint, filed December 4, 2020, Plaintiff asserts the following claims:  Fourth and Fourteenth Amendment Violations: Unreasonable Seizure against all Defendant Officers[3] (Count I); First and Fourteenth Amendment Violations against all Defendant Officers (Count II);

---

3 Plaintiff's Third Amended Complaint defines "Defendant Officers" as those officers identified in paragraphs 12-19 of the Third Amended Complaint, including the Supervisor Officers as defined in paragraph 17.  (*See* TAC, P. 2 n. 1).

Conspiracy to Deprive Civil Rights against all Defendant Officers and Defendant Lt. Col. Lawrence O'Toole (Count III); 42 U.S.C. § 1983 Municipal Liability *Monell*[4] Claim against Defendant City of St. Louis for Failure to Train, Failure to Discipline, Failure to Supervise, and for a Custom of Conducting Unreasonable Search and Seizures and Use of Excessive Force (Count IV); Assault against all Defendant Officers (Count V); False Arrest against all Defendant Officers (Count VI); Abuse of Process against all Defendant Officers and Defendant O'Toole (Count VII); Malicious Prosecution against all Defendant Officers and Defendant O'Toole (Count VIII); Intentional Infliction of Emotional Distress against all Defendant Officers (Count IX); Negligent Infliction of Emotional Distress against all Defendant Officers (Count X); Vicarious Liability under City Charter against Defendants O'Toole and Charlene Deeken, Director of Public Safety for the City of St. Louis (Count XI); Fourth and Fourteenth Amendment: Excessive Force against all Defendant Officers (Count XII); Fourth and Fourteenth Amendment: Failure to Intervene in Use of Excessive Force against all Defendant Officers and Defendant O'Toole (Count XIII); and Battery against all Defendant Officers (Count XIV).  (ECF No. 115).

As noted above, Defendants moved to dismiss Plaintiff's Third Amended Complaint on January 19, 2021, claiming qualified immunity for the counts asserting violations of § 1983, and official immunity for the state law claims.  (ECF No. 117).  Defendants further maintain Plaintiff fails to state a claim on which relief can be granted.  (*Id.*).

## **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted  as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

4 *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).   The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.   Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.*   Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted).

## DISCUSSION

### A. Exhibits Attached To Earlier Complaints

Despite having done so with prior Complaints, Plaintiff did not attach any exhibits to his Third Amended Complaint.   Defendants assert that the Court should still consider, for purposes of the instant motion, certain exhibits attached to the prior Complaints, either by finding them necessarily embraced by the Third Amended Complaint, or by taking judicial notice of them.

The exhibits referenced by Defendants are drawn from *Ahmad v. City of St. Louis, Mo.*, No. 4:17CV2455 MTS.

Upon consideration, the Court finds that the exhibits referenced by Defendants are not properly before the Court for consideration. "When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect." *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

Plaintiff abandoned the exhibits attached to his earlier Complaints by not including them with his Third Amended Complaint. While the Court may consider documents necessarily embraced by a complaint (but not attached), it may do so only for "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). The Court further declines to take judicial notice of the contents of the exhibits, because Federal Rule of Evidence 201(b) allows the Court to take judicial notice only of "fact[s] that [are] not subject to reasonable dispute", either because they are generally known within the Court's jurisdiction, or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the facts of which Defendants ask the Court to take judicial notice are disputed by Plaintiff, and so the Court declines to consider Defendants' requested exhibits in deciding this Motion to Dismiss.

**B. <u>Qualified Immunity</u>**

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or

statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question:  (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted).  "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted).  "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2 (E.D. Mo. Mar. 19, 2013).

## 1. Plaintiff's Arrest

In Count I of his Third Amended Complaint, Plaintiff alleges the defendant officers arrested him without probable cause, in violation of the Fourth Amendment.  He also alleges the officers' use of kettling without warning was an unreasonable seizure.  In Count II, Plaintiff alleges the defendant officers violated his rights to assemble and to free speech when they

interfered with his ability to gather information and cover a matter of public interest.  Defendant officers assert they had probable cause to arrest Plaintiff, and so did not violate his constitutional rights.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'"  *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-53 (8th Cir. 2011)).  "Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense."  *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).  "Arguable probable cause exists even when an officer mistakenly arrests a suspect believing the arrest is based in probable cause if the mistake is objectively reasonable."  *Id*. (internal quotation marks omitted).  A plaintiff asserting a retaliatory arrest claim under the First Amendment must plead and prove the absence of probable cause for the arrest.  *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019).  Thus, for his claims of unlawful seizure and retaliatory arrest, Plaintiff must show that the defendant officers did not have probable cause to arrest him.

While probable cause for an arrest is generally focused on the one arrestee's actions, law enforcement officers may arrest a large group of individuals if the officers have probable cause to believe that the group is committing a crime and acting as a unit.  *See Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012).  In *Bernini*, during protests in St. Paul, Minnesota, there were various reports of property damage around the City.  *Id.* at 1001.  Consequently, after the protest permits expired, the police commander ordered that no one be allowed to enter the downtown area.  *Id*.  A large group attempted to move towards downtown and officers blocked them.  *Id*.  The officers ordered the group to back up and deployed stinger blast balls against them.  *Id*.

Officers reported numerous objects were thrown at them. *Id.* The crowd grew in size and started chanting in unison and yelling profanities. *Id.* The officers continued to use non-lethal munitions to keep the crowd moving away from downtown. *Id.* at 1002. Officers decided to encircle the crowd in a park. *Id.* They announced everyone was under arrest and ordered everyone to sit down with their hands on their heads. *Id.* The officers then attempted to determine who had been at the initial altercation and who were innocent bystanders, eventually releasing approximately 200 people and arresting around 160 others. *Id.*

The Eighth Circuit held that the officers had probable cause to conduct the mass arrest because the individuals arrested acted as a unit in committing a crime. *Id.* at 1003-04. The Eighth Circuit found the officers reasonably could have concluded that the group had committed a crime and were acting as a unit because the individuals donned gas masks and other facial coverings, flags waved from within the crowd, several people shouted profanities and taunted the officers, members shielded themselves behind two large signs, and members chanted in unison. *Id.* at 1003-04. The Eighth Circuit also noted that the officers did not arrest everyone, but attempted to discern who had been a part of the initial altercation where the unlawful activity had occurred and who had not, eventually releasing approximately 200 people. *Id.* at 1005.

In its opinion, the Eighth Circuit relied on *Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009). In *Carr*, the D.C. Circuit held that "[a] requirement that the officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot, particularly when it is on the move – at night." *Id.* at 408. Therefore, to conduct a mass arrest, and not have to show particularized probable cause that each individual arrested violated the law, the police must show the crowd acted unlawfully as a unit. *Id.*

In this case, the defendant officers assert they had probable cause to conduct a mass arrest of the group for peace disturbance, unlawful assembly, or refusal to disperse.  As it relates to this case, in Missouri, a person commits the offense of peace disturbance if he:

> (2) Is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing:
>
> (a) Vehicular or pedestrian traffic; or
>
> (b) The free ingress or egress to or from a public or private place.

Mo. Rev. Stat. § 574.010 (eff. Jan. 1, 2017).   A person commits the offense of unlawful assembly if he "knowingly assembles with six or more other persons and agrees with such persons to violate any of the criminal laws of this state or of the United States with force or violence."  Mo. Rev. Stat. § 574.040 (eff. Jan. 1, 2017).  A person commits the offense of refusal to disperse "if, being present at the scene of an unlawful assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot."  Mo. Rev. Stat. § 574.060 (eff. Jan. 1, 2017).

Two other cases from this Court have addressed the mass arrest that occurred on September 17.  The defendant officers ask the Court to follow the holding in *Burbridge v. City of St. Louis, Mo.*, 430 F.Supp.3d 595 (E.D. Mo. 2019), which found that officers had probable cause to conduct the mass arrest.  In *Burbridge*, Judge Clark found the officers had grounds to believe the plaintiffs were part of a unit observed violating the law.  430 F.Supp.3d at 610.  He found that officers declared the area an unlawful assembly, issued multiple dispersal orders to the crowd, and then arrested those who refused to follow the lawful commands of the officers. *Id*.

The procedural posture of *Burbridge* differs significantly from this case.  Judge Clark decided a motion for summary judgment with proffered evidence.  *Id.* at 604-08.  In this case, the Court must accept as true, and may only consider, Plaintiff's allegations in his Third Amended Complaint.  Further, in *Burbridge* the undisputed facts included individuals throwing rocks and other objects at officers, and the officers giving dispersal orders through a public address system. *Id.* at 605.  The Third Amended Complaint here does not include any such allegations.

The factual allegations in this case more closely align with those in *Baude v. City of St. Louis,* 476 F.Supp.3d 900 (E.D. Mo. 2020).  The events in *Baude* concern the same night in question, September 17, and the same alleged kettling event.  *Id.* at 907.  The plaintiff heard about the Stockley protests and decided to act as a neutral observer, documenting protest activity. *Id.*  When he arrived at the intersection of Tucker and Locust, police officers ordered everyone to leave by walking north on Tucker.  *Id.*  The plaintiff obeyed and headed towards Washington. *Id.*  Individuals from shops, restaurants, and residential buildings joined the crowd.  *Id.*  Officers gave no further dispersal orders or other instructions, and started confining everyone to the intersection of Washington and Tucker.  *Id.*  The plaintiff asked an officer where he should go and the officer said it was too late to leave.  *Id.*  He then asked another officer if he could help, and the officer pushed him back into the intersection.  *Id.* at 908.  The plaintiff then was sprayed with pepper spray, arrested, zip-tied, and lined up against a building.  *Id.*

Judge Sippel, on a motion for judgment on the pleadings, found these allegations sufficient to preclude qualified immunity on the plaintiff's unlawful seizure claims.  *Id.* at 910. He stated, "Plaintiff's allegations of what occurred at the Washington and Tucker intersection on September 17, 2017, do not establish that the officers in this case could reasonably have concluded the group at the intersection was acting as a unit or violating the law."  *Id.*  He further

held the allegations showed no credible threat of force or violence to officers or property, as there were no reports of property damage after 8:30 p.m., and the scene was relatively calm.  *Id.*

Similarly, in this case there are no allegations the group chanted in unison, moved as a group, carried signs together, or in any way acted as if they were a unit.  While some vandalism did occur hours before the mass arrest, officers ordered that group to disperse, and there are no allegations that they did not, that they continued to vandalize property, or that they moved as a group towards Tucker and Washington.  It is not reasonable to assume the group of individuals arrested in mass are the same group that engaged in the earlier vandalism when the area includes many businesses, including shops and restaurants, as well as residential buildings, and the mass arrest occurred two to three hours after the vandalism occurred.

Nor are there any allegations to support that those in the group arrested committed any crimes.  Plaintiff alleges those arrested stood still, with their hands up.  No one acted violently or aggressively, and many asked to be allowed to leave, peacefully.  The scene was relatively calm before the officers began using chemical agents and deploying force against the group.  The allegations show no credible threat of force or violence to officers or property, or that any individuals were disobeying police orders.  Thus, Plaintiff's allegations do not establish that the officers in this case reasonably could have concluded that the group was acting as a unit or violating the law.  Under these alleged facts, the defendant officers could be found to have violated the Fourth Amendment, by arresting Plaintiff and others without probable cause.

The defendant officers also argue they are entitled to qualified immunity because it was not clearly established that they could not conduct a mass arrest of a crowd violating traffic laws and unlawfully assembling.  In 2012, *Bernini* clearly established that to conduct a mass arrest there must be probable cause that the group is committing a crime and acting as a unit.  665 F.3d

at 1003-04.  The facts in *Bernini* are not dissimilar to the general situation presented in this case.

Unlike in *Bernini*, however, where the crowd chanted together, carried signs together, and waved

flags together, there are no factual allegations in this case to support the defendant officers'

contention that the group was acting as a unit, or that officers could perceive them to be doing so.

Nor is it alleged that any of the officers in this case attempted to determine which individuals

were part of a unit acting unlawfully and which were swept up incidentally, as the officers did in

*Bernini*.  Because Plaintiff's allegations do not indicate the defendant officers had probable cause

to arrest Plaintiff, and it was clearly established at the time of the mass arrest on September 17,

2017, that to conduct a mass arrest, officers must have probable cause the group is committing a

crime and acting as a unit, they are not entitled to qualified immunity.

Defendants also argue that the generic allegations against "supervisory officers" are not

sufficient to preclude qualified immunity for the Defendants named in paragraph 17.  While

Plaintiff's allegations with respect to a number of these officers are sparse, the Court declines to

dismiss them at this time.  Instead, the Court will permit the parties to engage in discovery, and

Defendants remain free to renew their argument for dismissal at the summary judgment stage.

Based on the foregoing, the Court will deny Defendants' Motion to Dismiss Counts I and

II of Plaintiff's Third Amended Complaint.

2. **Excessive Force**

In Count XII of his Third Amended Complaint, Plaintiff asserts a claim under § 1983 for

a violation of his right to be free from excessive force under the Fourth and Fourteenth

Amendments.  He alleges the defendant officers used excessive force against him when they

pepper sprayed him multiple times, kettled him, and forcefully tied his hands too tightly with zip

ties.  In Count XIII, Plaintiff asserts a claim for failure to intervene against Defendant O'Toole

and the individual Defendants who did not participate in but witnessed specific acts of excessive force.

Defendants argue that Plaintiff does not allege the supervisory officers knew other officers were using excessive force, and that if they did know, it was reasonable for them to believe said force was necessary.  They also argue it was not clearly established that the use of pepper spray, tight handcuffing, arm twisting, or the brief dragging of an arrestee constituted anything more than *de minimis* use of force.  Thus, Defendants argue they are entitled to qualified immunity.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  The Court considers the claim from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations and quotation marks omitted).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.  "[F]orce is least justified against nonviolent

misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

Plaintiff alleges that although he voluntarily got down on his knees, Defendants Kiphart and Burle sprayed him with pepper spray.  As Plaintiff attempted to hide from the spray, an unidentified officer grabbed his arms so forcefully he feared his right shoulder was going to pop out.  That same officer then restrained Plaintiff's hands with zip ties, and pepper sprayed him directly in the face.  Finally, two other unidentified officers violently yanked Plaintiff from the ground, and handed him to Koerper, who completed the arrest.

Before addressing the specific uses of force, the Court first must address Defendants' argument that none of the alleged uses of force against Plaintiff constitute Fourth Amendment violations, because they resulted in no more than *de minimis* injury to Plaintiff.  Since 2011, the Eighth Circuit has made it clear that a *de minimis* injury does not preclude a Fourth Amendment violation.  *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011); *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) ("While a *de minimis* injury does not preclude a claim of excessive force...").  The appropriate inquiry is the nature of the force applied, not the degree of injury inflicted.  *Chambers*, 641 F.3d at 906.  Defendants' argument is unavailing.

Viewing the facts in the light most favorable to Plaintiff, the use of pepper spray against him was not objectively reasonable.  *See Quraishi v. St. Charles County, Mo.*, 986 F.3d 831, 840 (8th Cir. 2021) (holding the use of pepper spray to arrest an unarmed, compliant suspect can be excessive force).  *See also Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) (establishing it is unreasonable to use pepper spray against a non-resisting, non-fleeing individual suspected of a non-violent misdemeanor).  The alleged crimes officers were detaining Plaintiff for were non-violent misdemeanors, and there is no indication that he was fleeing or resisting arrest, that he

posed an immediate threat to the officers' safety, or that he disobeyed any officer's commands. Similarly, under Plaintiff's allegations it was not objectively reasonable for an unidentified officer to grab his arm so forcefully he feared a shoulder dislocation, or for two other unidentified officers to yank Plaintiff violently from the ground. *See Blazek v. City of Iowa, City*, 761 F.3d 920, 925 (8th Cir. 2014) ("[a] gratuitous and completely unnecessary act of violence is unreasonable and violates the Fourth Amendment.").

Conversely, the kettling, *i.e.*, forcing Plaintiff along with other individuals into a single area and not allowing him to leave, did not involve an objectively unreasonable use of force against Plaintiff. Based on the facts alleged in the Third Amended Complaint, officers did not use any force in the act of kettling Plaintiff. The alleged use of force came after he had been trapped in the intersection and was being placed under arrest. Therefore, the defendant officers are entitled to qualified immunity on Count XII as it relates solely to the act of kettling Plaintiff.

Plaintiff also has not established that officers applying zip ties too tightly violates the Constitution. The Eighth Circuit previously found that an officer who applies handcuffs so tightly they break a suspect's wrist uses excessive force in violation of the Fourth Amendment. *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). It has not been clearly established that anything less than this constitutes excessive force. Here, Plaintiff alleges he was handcuffed with tight, painful zip ties. These allegations do not rise to the level of force established in *Kukla*, where the suspect's wrist was broken from the handcuffs. Because it was not clearly established that applying zip ties too tightly violates the Fourth Amendment, the defendant officers are entitled to qualified immunity on this portion of Plaintiff's claim.

Defendants argue the supervisory defendants who did not personally pepper spray, grab, or yank Plaintiff cannot be liable for the alleged uses of excessive force. Officers who do not

directly use excessive force, but fail to intervene to prevent the use of excessive force by another officer, may be liable for violating the Fourth Amendment. *Nance v. Sammis*, 586 F.3d 604, 611-12 (8th Cir. 2009). As Judge Sippel found in *Baude*, at this stage of litigation Plaintiff need only allege facts sufficient to state a plausible claim for liability. 476 F.Supp.3d at 914. Here Plaintiff alleges the supervisory defendants were present at the mass arrest, witnessed officers using excessive force, and failed to intervene. He also alleges the supervisory defendants issued orders allowing the use of force against a non-violent, largely compliant crowd. These allegations are sufficient to state a claim against the supervisory defendants. *See Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."). In *Nance* the Eighth Circuit held that, as of June 2007, it was clearly established that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Id*. at 612. Consequently, the supervisory defendants are not entitled to qualified immunity on Count XIII.

## C.    Civil Conspiracy

In Count III of his Third Amended Complaint, Plaintiff asserts a § 1983 claim that all Defendant Officers and Defendant O'Toole "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights." (TAC, ¶ 184).

Defendants move to dismiss Plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, or in the alternative, to find that Defendants are entitled to qualified immunity because it is not clearly established that the intracorporate conspiracy doctrine does not apply. The intracorporate conspiracy doctrine provides

that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelley v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016) (quoting *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)). The Eighth Circuit has only applied the doctrine to 42 U.S.C. § 1985 claims, however; it has not yet addressed whether the doctrine applies to § 1983 conspiracy claims. This Court previously has declined to apply the doctrine in § 1983 cases, and again declines to extend the doctrine's reach in the absence of direction from the Eighth Circuit. Defendants thus are not entitled to qualified immunity on Plaintiff's § 1983 conspiracy claim by virtue of the intracorporate conspiracy doctrine.

### D. Official Immunity

Defendants next assert they are entitled to official immunity from Plaintiff's state law claims. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however. *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted). "A finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'" *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted)). "A finding of bad faith embraces

more than bad judgment or negligence.    It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."    *Id.* (internal quotation marks and citations omitted).

In their Motion to Dismiss, Defendants argue that Plaintiff cannot show Defendants' actions were undertaken in bad faith or with malice.  The Court finds that Plaintiff's allegations are sufficient to survive Defendants' motion, however.   In other words, "[t]he allegedly unnecessary use of force against non-resisting individuals, such as plaintiff, the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests not related to police misconduct may reasonably support a finding of malice or bad faith."  *Newbold v. City of St. Louis, Mo.*, No. 4:18CV1572 HEA, 2021 WL 4061066, at *10 (E.D. Mo. Sep. 7, 2021). Official immunity thus is not appropriate at this stage of the litigation, and Defendants' Motion to Dismiss on that basis will be denied.

### E.    Abuse Of Process And Malicious Prosecution

Defendants next assert that Plaintiff's claims of abuse of process and malicious prosecution are insufficient as a matter of law, because although Plaintiff alleges the issuance of a summons, "he was never required to appear in response to the summons (which is not alleged to have issued from a court), there is no allegation that, in fact, any defendant initiated a charge against [] plaintiff (see ¶ 125), there is no allegation of any improper or 'perverted' use of process, and malicious prosecution actions are not favored."  (Defendants' Memorandum in Support of Motion to Dismiss Third Amended Complaint ("Defendants' Memo in Support"), P. 13).

To assert a claim of malicious prosecution, a plaintiff must establish:   "(1) the

commencement of a prosecution against the plaintiff, (2) the instigation of that prosecution by the defendant, (3) the termination of the proceeding in favor of the plaintiff, (4) the want of probable cause for the prosecution, (5) that defendant's conduct was actuated by malice, and (6) damage to the plaintiff." *Baker v. St. Joe Minerals Corp.*, 744 S.W.2d 887, 888 (Mo. App. 1988).  Instigation requires affirmative action either through advice, encouragement, pressure, or something similar.  *Id.* at 889.  "The providing of honest information does not constitute instigation, although supplying false information may."  *Id.*  To establish a claim for abuse of process, a plaintiff must show:  "'(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.'"  *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. 2019) (quoting *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990)). Both malicious prosecution and abuse of process require that a legal process be initiated.  *Id.; Baker*, 744 S.W.2d at 888.

Plaintiff's Third Amended Complaint contains only two factual allegations related to his claims of malicious prosecution and abuse of process.  The first is that upon their release, all of the arrestees were given summonses showing that they had been charged with "failure to disperse", and instructing them to appear in St. Louis City Municipal Court on October 18, 2017. (TAC, ¶ 114).  The second is that on October 13, 2017, the St. Louis City Counselor's office issued a letter stating that it was reviewing the evidence in order to determine whether or not to file charges, and that the arrestees thus had no obligation to appear in Municipal Court on October 18, 2017.  (*Id.*, ¶ 122).  There are no allegations that Plaintiff was charged with a crime, nor are there any allegations about who instigated the issuance of the initial summons.  While

Plaintiff alleges that Defendants arrested him, he does not allege those same officers were involved in issuing the summons.  Consequently, he does not allege sufficient facts to state claims for abuse of process or malicious prosecution.  The Court thus will dismiss Counts VII and VIII of Plaintiff's Third Amended Complaint.  *See Street v. O'Toole*, No. 4:19CV2590 CDP, 2021 WL 677909, at *10 (E.D. Mo. Feb. 22, 2021) (dismissing claims of malicious prosecution and abuse of process because plaintiffs did not allege any facts showing any defendant had a role in the initiation of any proceedings against the plaintiffs).

### F.   Intentional and Negligent Infliction Of Emotional Distress

Plaintiff alleges a claim for intentional infliction of emotional distress in Count IX, and negligent infliction of emotional distress in Count X against the defendant officers.  Defendants assert the Court must dismiss these counts because they are "simply repackaged claims of assault or battery," citing to *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177 (Mo. banc 2019). (Defendants' Memo in Support, P. 13).  The Missouri Supreme Court, in *Halsey*, recited the general rule that "[w]here a defendant's conduct amounts to the commission of one of the traditional torts…and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common-law action."  576 S.W.3d at 181 (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996)).  This rule only applies to the tort of intentional infliction of emotional distress, not negligent infliction of emotional distress.  *Id.*  Thus, Plaintiff's claim of negligent infliction of emotional distress may proceed.  *See Street*, 2021 WL 677909, at *11 ("[P]laintiffs only allege a negligent infliction claim, so *K.G.* and *Halsey* do not bar this claim.").

However, the Court need not dismiss Plaintiff's intentional infliction of emotional distress claim either.  While he cannot proceed to judgment on all of his claims for assault,

battery, and intentional infliction of emotional distress when they are all based on the same underlying conduct, at this stage of the case he may assert alternative theories of recovery.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Therefore, at this point the Court will not dismiss the claim of intentional infliction of emotional distress, with the understanding that at some point Plaintiff must choose between his competing claims.

G.     **Vicarious Liability Under The City's Charter**

In Count XI, Plaintiff asserts a novel theory of liability.  He alleges that Lt. Col. O'Toole and Charlene Deeken are vicariously liable under the City's Charter.  According to Plaintiff, Article VIII, Section 5 of the Charter states, "[e]ach head of a department, officer or division ***shall*** be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself."  (TAC, ¶ 255).  Plaintiff alleges O'Toole and Deeken were officers and employees of the Chief of Police, and were acting in the scope of their employment when they committed the acts alleged in the Third Amended Complaint.  (*Id.*, ¶¶ 256, 257).  Defendants ask that the Court decline supplemental jurisdiction, and the Judges in *Street*, *Ortega*, and *Newbold* agreed to do so.

Under 28 U.S.C. § 1367(c)(1), the Court may decline supplemental jurisdiction over a claim that raises a novel or complex issue of State law.  The undersigned agrees with Judges Perry, Noce and Autrey that supplemental jurisdiction should be declined with regard to this novel and complex issue of State law.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Third Amended Complaint (ECF No. 117) is **GRANTED in part** and **DENIED in part**, in accordance with the foregoing.


Dated this 29th Day of September, 2021.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE